## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KAYLA REED**, an individual, | ) | **Case No. 1:17-cv-08446** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Trial by Jury Demanded** |
| **DIESEL U.S.A., INC.**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### COMPLAINT FOR INJUNCTIVE RELIEF,
### CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

Plaintiff, **KAYLA REED**, ("Plaintiff"), by and through her attorneys, for her complaint against **DIESEL USA, INC.**, states as follows:

### INTRODUCTION

1.      Plaintiff is a blind and visually-impaired person who requires screen-reading software to read website content using her computer.

2.      Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision.  Others have no vision.

3.      Plaintiff brings this civil rights action against Defendant **DIESEL U.S.A., INC.** ("Defendant") for its failure to design, construct, maintain, and operate its website, Shop.Diesel.com (the "website") to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

4.      Defendant's denial of full and equal access to its website, and therefore denial of

its products and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

5.      Because Defendant's website, Shop.Diesel.com is not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers, including Plaintiff.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

7.      This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's UCRA claims are so related to Plaintiff's federal ADA claims, they form part of the same case or controversy under Article III of the United States Constitution

8.      This Court has personal jurisdiction over Defendant because it is deemed a resident of the State of New York and it conducts and continues to conduct a substantial and significant amount of business in the State of New York.

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(1) because Defendant resides in this District and this Court has personal jurisdiction over Defendant.

## PARTIES

10.     Plaintiff, at all times relevant and as alleged herein, is a resident of California,

County of Los Angeles. Plaintiff is also blind, visually-impaired, handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

11.    Plaintiff is informed and believes, and thereon alleges Defendant operates a website that allows consumers to browse the beauty products and accessories sold in its retail stores and via the website.  Defendant's headquarters are located in New York, New York.

12.    Defendant's website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) because its website is, or is part of, a "sales or rental establishment," and a "service establishment."

13.    Defendant has been and is committing the acts or omissions alleged herein in Los Angeles County of the State of California which caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in California. Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's website in Los Angeles County.

14.    The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's independent, full and equal access multiple times in the past, and now deter Plaintiff from accessing Defendant's website.

## THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET

15.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike. As an essential tool for many Americans, when accessible, the Internet provides

individuals with disabilities great independence.

16.     Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer or smart-phone screen.  This technology is known as screen-reading software and is also commonly referred to as a screen reader.

17.     Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

18.     Unless websites are designed to allow screen-reading software users to navigate Internet content by way of the keyboard or through moving their fingers over the smartphone screen, blind and visually-impaired persons are unable to fully, equally and independently access websites and the information, products, and services contained therein.

19.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them.  Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately.

20.      Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

21.     For screen-reading software to function, the information on a website must be capable of being rendered into meaningful text so it may be read back to the user and then the user can navigate a website and various web pages within a website using their keyboard.

22.     If the website content is not capable of being rendered into meaningful text, the

blind or visually-impaired user is not able to access and navigate the same content on a website that is available to sighted users.

23.     The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation provide accessible electronic and information technology as auxiliary aids and services.  *See* 28 C.F.R. §36.303(a), (b) and (c)(ii).

24.     Within this context, numerous courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *See, e.g.*, *Gorecki v. Dave & Buster's, Inc.*, No. 2:17-cv-01138-PSG-AGR (C.D. Cal. October 10, 2017) (Gutierrez, P.) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims)("a finding of liability regarding the Website's compliance with the ADA does not require sophisticated technical expertise beyond the ability of the Court"); *Kayla Reed v. CVS Pharmacy, Inc.*, Case No. 2:17-cv-03877-MWF-SK, at *9. (C.D.C.A. Oct. 3, 2017) (Fitzgerald) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly not a violation of due

process."); *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Gomez v. Lego Systems, Inc.*, Case 1:17-cv-21628-CMA (S.D. Fla. July 31, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website) [ECF #40];   *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website. There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com,*

*Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017 (same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Nat'l Fed'n of the Blind v. Scribd, Inc.*, 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass

Pro Shops products, offers, and locations…. [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation.

Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a permanent injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring accessibility); *Davis v. BMI/BNB Travelware company* No. CIVDS1504682 WL2935482 (Cal.Super. March 21, 2016) (granting motion for summary judgment for plaintiff and ordering that defendant's website be made WCAG 2.0 compliant and awarding Unruh damages in favor of plaintiff).

25.     Commercial websites that are not accessible for blind and visually-impaired individuals using screen-readers and keyboards only, violate this basic mandate of the ADA. *See National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006).

26.     The Department of Justice (the "DOJ") has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies. *See, e.g.*, *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and

regulations.").   Thus, Defendant is on notice that the ADA's general mandate applies to website accessibility. *See Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014); *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 444–45 (9th Cir. 1994).

### DEFENDANT'S FAILURE TO MAKE ITS WEBSITE ACCESSIBLE AND PLAINTIFF'S ATTEMPTS TO ACCESS

27.     Defendant offers the commercial website, Shop.Diesel.com to the public.

28.     The website offers features which should allow all consumers to access the goods and services Defendant offers.

29.     The goods and services offered by Defendant's website include, but are not limited to the following, which should allow all consumers to: browse products offered for sale, learn about new arrivals and special editions, register a user account, locate physical retail stores and shop.

30.     Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered therein and available at its retail stores.

31.     Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually-impaired persons have been and are still being denied equal access to the numerous goods, services, and benefits offered to the public through Defendant's website.

32.     Plaintiff cannot use a computer without the assistance of screen-reading software.

33.     However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the internet.

34.     Plaintiff has visited Defendant's website on several separate occasions using the

JAWS screen-reader.

35.     Plaintiff first visited the website in September of 2017 with the intention of locating one of Defendant's physical retail stores for the purpose of shopping.  Plaintiff found unlabeled or mislabeled buttons and links which prevented her from navigating the website. Plaintiff encountered pages with insufficient navigational headings requiring Plaintiff to read all of the text to find any particular item.  Plaintiff was unable to locate a search field and was forced to painstakingly attempt to navigate each individual item.  The combination of unlabeled links, buttons and graphics render the website unintelligible and prevent navigation and use.  In addition, and due to the confusing structure of the site and the lack of navigational headings and generally confusing website structure, Plaintiff could not utilize the store locator feature using a screen-reader.

36.     Due to the widespread access barriers Plaintiff encountered on Defendant's website, Plaintiff has been deterred, more than once, from accessing Defendant's website and this has prevented her from full and equal access of Defendant's products and services.

37.     On more than one occasion in 2017 Plaintiff attempted to do business with Defendant by using Defendant's website and Plaintiff encountered barriers to access on the website.

38.     Despite past and recent attempts to do business with Defendant by visiting its website, the numerous access barriers contained on the website encountered by Plaintiff, have denied Plaintiff full and equal access.

39.     Plaintiff, as a result of the barriers on Defendant's website continues to be deterred on a regular basis from accessing Defendant's website.

40.     Due to the inaccessibility of Defendant's website, blind and visually-impaired

consumers, such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendant offers to the public on its website.

41.     The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website.

42.     If Defendant's website was equally accessible to all, Plaintiff could independently navigate Defendant's website and complete a transaction as sighted individuals do.

43.     Having made many attempts to use Defendant's website, Plaintiff has actual knowledge of the access barriers that make these privileges, goods and services inaccessible and independently unusable by blind and visually-impaired people.

44.     Because maintaining and providing a website that is fully and equally accessible to all consumers would provide Plaintiff and other visually-impaired consumers with full and equal access to Defendant's website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.   Construction and maintenance of a website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b.   Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c.   Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

45.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

46.     The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action.  In relevant part, the ADA requires:

> "In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . ."
> (42 U.S.C. § 12188(a)(2).)

47.     Because Defendant's website is not equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to comply with the ADA and make the website accessible. To do so, Defendant must utilize input from the Agreed Upon Consultant in order for Defendant to modify the website's functionality so as to provide effective communication about the goods, services and/or privileges offered by the website to screen-reader users, instead of only providing such functionality to sighted persons.

48.     Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

      a.  Train Defendant's employees and agents who develop Defendant's website on accessibility and compliance with the ADA using criteria which will provide effective communication to persons who blind and use screen-readers;

      b.  Regularly check the accessibility of Defendant's website to maintain accessibility as required by the ADA using criteria which will provide effective communication to persons who blind and use screen-readers;

c. Regularly test end-user accessibility of the websites by screen-reader users to ensure that Defendant's website is accessible to blind and visually-impaired individuals who would access them with screen-reading technology and prove effective communication; and,

d. Develop an accessibility policy that is clearly disclosed on its website, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Defendant has investigated and identified the accessibility-related problem.

49. If Defendant's website was accessible to screen-reader users, Plaintiff and similarly situated blind and visually-impaired people could independently access Defendant's products and services.

50. Although Defendant may currently have centralized policies regarding the maintenance and operation of its website, Defendant lacks a plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

51. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendant's website in violation of their rights.

## COUNT I

## [VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT]

52. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

53. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

54.    The ADA requires that the place of public accommodation not discriminate in any way in which it interacts with the public, whether by selling products at a physical location or over a virtual location on the Internet.

55.    Defendant's website is therefore a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181.

56.    Defendant's website is a service, privilege, or advantage of Defendant.

57.    Defendant's website is a service that is integrated with Defendant's products and services.

58.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.   (42 U.S.C. § 12182(b)(1)(A)(i).)

59.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.  (42 U.S.C. § 12182(b)(1)(A)(ii).)

60.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

"[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges,

advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

61.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

62.     Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

63.     Furthermore, Plaintiff has been denied full and equal access to Defendant's website has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

64.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

65.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**WHEREFORE,** Plaintiff prays pray for judgment in her favor and against Defendant, as follows:

1.     A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's

failure to take action that was reasonably calculated to ensure that its website was fully and equally accessible to, and independently usable by, blind and visually-impaired individuals;

2.      A preliminary and permanent injunction enjoining Defendant from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to its website;

3.      A preliminary and permanent injunction requiring Defendant to take the steps necessary to make its website readily accessible to and usable by blind and visually-impaired individuals;

4.      For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

5.      For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Defendant's discrimination;

6.      For prejudgment interest to the extent permitted by law;

7.      For costs of suit; and

8.      For such other and further relief as this Court deems just and proper.

## COUNT II

**[VIOLATIONS OF THE UNRUH CIVIL
RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*]**

66.      Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this second cause of action as though fully set forth herein.

67.      California Civil Code § 51 *et seq.* guarantees equal access for people with

disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendant is systematically violating the UCRA, Civil Code § 51 *et seq*.

68.   Defendant's website is a "business establishments" within the meaning of the Civil Code § 51 *et seq*.  Defendant generates millions of dollars in revenue from the sale of goods through its website. Defendant's website is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Defendant is violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods and services provided on its website.  These violations are ongoing.

69.   Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendant has constructed a website that is inaccessible to Plaintiff, Defendant maintains the website in an inaccessible format, and Defendant has failed to take actions to correct these barriers.

70.   Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above.  Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

71.   The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

72.   Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

73.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff prays pray for judgment in her favor and against Defendant, as follows:

1.      A preliminary and permanent injunction enjoining Defendant from violating the UCRA, Civil Code § 51 *et seq*, with respect to its website;

2.      A preliminary and permanent injunction requiring Defendant to take the steps necessary to make its website readily accessible to and usable by blind and visually-impaired individuals;

3.      An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

4.      For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to California Civil Code § 52(a);

5.      For prejudgment interest to the extent permitted by law;

6.      For costs of suit; and

7.      For such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated: November 1, 2017

*Respectfully submitted*,

/s/ *Javier L. Merino, Esq.*

Javier L. Merino, Esq. (5294699)
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
(201) 355-3440
(216) 373-0536 (fax)
jmerino@dannlaw.com
DisabilityNotices@dannlaw.com
*Counsel of Record for Plaintiff*